**STATE of Missouri, Plaintiff–Respondent,**

v.

**Torrey L. TROTTER, Defendant–Appellant.**

**No. 28115.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 27, 2007.

Ellen H. Flottman, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Torrey L. Trotter ("Appellant") was convicted following a jury trial in the Circuit Court of Greene County of class B assault in the first degree, in violation of section 565.050,[1] armed criminal action, in violation of section 571.015, and burglary in the first degree, in violation of section 569.160. Appellant was sentenced to concurrent terms of twelve, twelve, and fifteen years respectively. On appeal, Appellant alleges that the trial court abused its discretion by allowing the State's late endorsement of witness Quinn Martin ("Martin"), because the ruling denied Appellant a fair trial and his due process right to present a defense. We disagree and affirm the ruling of the trial court.

Appellant does not challenge the sufficiency of the evidence. We view the evidence in a light most favorable to the verdict. *State v. Johnson,* 95 S.W.3d 221, 222 (Mo.App. S.D.2003). Following this standard of review, the record shows that on the morning of March 27, 2004, Appellant was in an altercation with John Stafford ("Stafford"). The altercation began when Appellant refused to get out of a rental car, which had been rented by Stafford for a trip with Holly Jaskeiwicz ("Mother"), who was the mother of Appellant's children. The altercation escalated and Appellant was hit by Stafford several times. When the altercation was over, Appellant's left eyelid was bleeding and his right eye was swollen shut. Both a police officer and EMS arrived shortly after the altercation; however, Appellant did not want to press charges. Appellant's testimony is clear that at the time of the altercation Appellant did not know that Stafford was the man with whom he had been fighting. Stafford, however, testified that he had been told by Mother that Appellant was sitting in his rental car.

After the altercation, Appellant went to the home of Donnell Hubbard ("Hubbard"); at a later time, Appellant's mother also arrived at Hubbard's house. Appel-

1. All references to statutes are to RSMo 2000, unless otherwise specified.

lant claimed at trial that he described the man he had never met before who had beaten him to his mother and she recognized the description as a man she knew, Stafford. Appellant, his mother, Hubbard, Hubbard's sister, and Appellant's mother's boyfriend got into a white van to go to Stafford's residence so that Appellant's mother could talk to Stafford about why he had hit her son. When they arrived at the residence, however, Appellant and Hubbard exited the van by themselves, approached the residence, and were waived in by Zack Tolliver ("Tolliver"), who was sitting at a table in the house. The men entered the house through the open garage. They yelled and fired shots at Stafford, who crouched behind the refrigerator door. Stafford's brother, Billy, was in a bedroom. When he heard the commotion and gunfire, he grabbed his own loaded gun and shot at Appellant and Hubbard. Billy hit at least one of the men and they both ran from the house. Stafford, Billy and Tolliver all testified that both Appellant and Hubbard were carrying guns and shooting at them. Stafford followed the men out of the house and threw a pickle jar at the men as they ran away. Appellant and Hubbard were taken to the hospital where they were treated for their wounds.

 Appellant's sole point on appeal is that the trial court abused its discretion in overruling defense counsel's objection and allowing the State to present Martin, a witness who was endorsed on the second day of trial. Rule 23.01(e) [2] provides:

[t]he names of all material witnesses for the prosecution shall be listed [on the indictment or information form] except rebuttal witnesses and witnesses who will appear upon the trial for the production or identification of public records. Additional witnesses may be listed at any time after notice to the defendant upon order of the court.

Rule 23.01(e). "This [C]ourt seeks to discourage delay in endorsing the names of additional witnesses but recognizes that late endorsements must sometimes be permitted if they can be made without prejudice to the defendant's rights." *State v. Cobb*, 444 S.W.2d 408, 415 (Mo. banc 1969). The trial court, however, has broad discretion in determining whether a late endorsed witness should be permitted to testify and this Court will reverse only for an abuse of discretion which results in fundamental unfairness. *State v. Bolen*, 731 S.W.2d 453, 460 (Mo.App. E.D.1987). In determining whether there was an abuse of discretion, an appellate court will take into consideration many factors such as, whether the defendant waived the objection, whether the State intended surprise or acted in bad faith, and whether the defendant was in fact surprised or disadvantaged. *State v. Sweet*, 796 S.W.2d 607, 613 (Mo. banc 1990).

Appellant's claim is that he was prejudiced because had Appellant known that Martin would testify they would have adopted a different defense strategy. According to Appellant, the defense strategy was to identify all of the "holes" in Stafford's telling of the events of March 27, 2004, in order to prove that Appellant's version was more believable. Appellant's version of the events was that after he was beaten up by Stafford he went over to Hubbard's house, where his mother arrived soon after. After hearing what had happened to her son, Appellant's mother wanted to go over to Stafford's house to talk to him about why he had beat up Appellant. According to Appellant, there was no talk of using weapons and he had no idea that Hubbard was carrying a gun.

---

**2.** All rule references are to Missouri Court Rules (2007), unless otherwise specified.

The only reason Appellant was going over to Stafford's house was to hear his mother and Stafford talk.[3] When they arrived at Stafford's house, Appellant and Hubbard went in through the open garage. Hubbard started shooting, but Appellant, who did not have a gun, was taken by surprise and he pushed Tolliver, an elderly man, out of the way because he did not want to see anyone get hurt. When Billy came out shooting, Appellant and Hubbard left as quickly as they could and were both shot on the way out.

In accordance with this theory, the defense planned to specifically attack Stafford's credibility on the issue of the "thrown pickle jar." Stafford testified that after Appellant and Hubbard fled his residence, he followed and threw a pickle jar at them; however, the police officer that first arrived at the scene along with other detectives indicated that the officers never found a pickle jar, broken or otherwise. Martin, a neighbor, was allowed to testify that he not only heard the glass break, but that he also saw the broken jar after the shooting was over. Appellant argues that had he known about Martin's testimony earlier he would have changed his defense strategy.

We find that the trial court did not abuse its discretion. There is no evidence of deception or bad faith on the part of the State. Martin was listed in the police report and during voir dire the prosecutor mentioned that Martin was one of the possible witnesses. Appellant was also not surprised by Martin's testimony because Martin gave a full statement to the police, which was included in the police report. The State had only called two witnesses

prior to the endorsement and the pickle jar question was a minor part of the testimony. Finally, Appellant's trial counsel was given an opportunity to speak with Martin before he was called to the witness stand.

We find that no prejudice occurred. The minor inconsistency concerning the pickle jar was not outcome dispositive. Martin testified about hearing the shots, seeing someone in the white van, hearing a female voice come from within the van, and seeing the three occupants of the apartment running out after Appellant and his friend ran from the house. He further testified about the broken glass, ostensibly from the pickle jar. Appellant's defense strategy of pointing out discrepancies in Stafford's testimony may have been slightly weakened by testimony corroborated by Martin concerning broken glass; however, there were many other points of weakness in Stafford's testimony, which defense counsel pointed out on cross-examination and in closing statements. Among the discrepancies are issues far more important than whether the victim threw a pickle jar, after the shooting, at Appellant. Appellant utilized a defense that he never had a weapon and that Hubbard was the only one with a weapon. He claimed surprise that Hubbard displayed a weapon and noted the only gun recovered was a .22 caliber gun, which could not be clearly linked to the case or the .22 slugs found at the scene. Appellant further argued to the jury that although Stafford, Billy, and Tolliver claim to be victims, the only people who were shot were Appellant and Hubbard. Appellant had the opportunity to point out that Stafford was not an honest man because he did not admit to the

---

3. Although Appellant claims he was only going to Stafford's house to listen to Stafford and Appellant's mother talk, the evidence indicates that his mother never made it inside the house. Martin testified that he saw some-

one in the van the entire time and Appellant's mother testified that she made it to the driveway but turned around when she saw Appellant and Hubbard fleeing the house.

officers that he was the one who beat up Appellant earlier that day. The pickle jar did not go to the heart of the defense, but was only a minor collateral matter.

Appellant suffered no fundamental prejudice due to the trial court's ruling, thus, the court did not abuse its discretion in allowing the testimony of Martin. The point is denied; the judgment is affirmed.

LYNCH, C.J., BARNEY, P.J., concur.