Jonathan S. MELILLO, Respondent,

v.

STATE of Missouri, Appellant.

No. SD 31605.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 1, 2012.

Chris Koster, Atty. Gen., Jessica P. Meredith, Asst. Atty. Gen., Jefferson City, for Appellant.

Stuart P. Huffman, Springfield, MO, for Respondent.

Before SCOTT, P.J., BATES, J., and BURRELL, C.J.

PER CURIAM.

We reverse a grant of post-conviction relief.

## Background: The Stalking Case [1]

When Victim ended their relationship, Movant reminded her how "he had been part of an assassination group, that he had done operations as part of this group both in Panama and Bosnia." He frightened Victim by saying he could at any time "have people here in Springfield" kill Victim or any member of her family, her friends, or her ex-husband.

The next day, Movant went to Victim's workplace and angrily threatened to destroy her life. He said he would get Victim fired from work, thrown out of school, kicked out of her church, and that he would ruin her reputation with her friends.

Thereafter, Movant repeatedly called Victim at home, at work, and on her cell. He left Victim's friend a "very unpleasant" message. He went to Victim's apartment in the early morning hours, rang the doorbell, peered through patio doors, and left a note. Victim called the police. An officer arrived. As the officer was taking the report, Movant called again. The officer took the phone and identified himself as a police officer. "Screw you bitch," said Movant and hung up.

Movant kept after Victim. Her answering machine filled up with his messages. He walked by her office. He emailed her boss. He followed her as she ran work errands. He noted a co-worker whom Victim had dated, then told Victim, "now I know what my target looks like." When Victim and a friend went to lunch, Movant followed them. Security personnel at work asked Victim not to walk about alone.

One evening, Victim's ex-husband ("Father") brought their two sons to visit Victim. Movant sat in his truck in the parking lot. After the boys entered Victim's apartment, Father drove off with his family. Movant followed them, driving aggressively and flashing his lights. He cut off Father's vehicle, sped away, then skidded sideways, blocking both lanes and forcing Father to stop. Movant got out, yelling and pointing as he approached. Father told his wife to call 911, got their child down on the floorboard, and shouted for Movant to show his hands. When Movant would not do so, Father threatened to run him over. Movant finally showed his hands and Father hit reverse, speeding backwards down the street. He met police at Victim's apartment and gave a statement, then Father, his family, and the officers left.

Twenty minutes later, Movant was at Victim's apartment. She called 911 as he beat on doors and windows and shouted for her to come out. Then knocking ceased as the power went off. The lights came back on and Movant resumed knocking and yelling.

Victim stayed on her 911 call until the police returned. Movant boasted to officers about his fighting ability and law enforcement background, and said it would take several of them to get him to jail if he chose to fight. Officers arrested him and told Victim how to seek an order of protection.

Movant was served with an *ex parte* order the next day. He continued to email and call Victim. He told officers who came to his apartment that "[t]he big word in today's world is stalking, but I'm not stalking her." A consent search yielded Movant's emails to Victim and a cell phone from which he admitted that he "accidentally" may have called her. Movant was arrested again.

---

1. We view this evidence in the light most favorable to the underlying criminal verdict. *See Hutton v. State*, 345 S.W.3d 373, 374 n. 1 (Mo.App.2011). We refer to Mr. Melillo as "Movant" and, for privacy reasons, to his former girlfriend as "Victim."

The court warned Movant, at a hearing, to have "absolutely no contact" with Victim. Movant slammed his chair into the table, stormed out of the courtroom, and continued to call, email, and follow Victim. Finally, after yet another workplace incident, Movant was arrested again. Complaining this was "bullshit," Movant yelled back toward Victim that he would "get" her.[2]

Movant was charged with aggravated stalking and was tried March 5–8, 2007. Trial counsel was public defender David Smith. The defense theory was that Movant did not intend to frighten Victim and made no credible threat. Testifying in his own defense, Movant admitted that he repeatedly emailed and called Victim. He did not deny that he told Victim that he could make a call and have her family killed, but he told jurors that he had been exaggerating.

The jury found Movant guilty and recommended a three-year sentence. Victim asked the court to give Movant probation, but with "as many restrictions as possible" so he would not continue to violate her rights. The court honored her request and granted probation.

Movant appealed, claiming trial court error in granting the State's motion to endorse Father as a witness, denying a continuance, and denying a motion for bill of particulars. This court affirmed the conviction by unpublished memorandum.

### Background: The PCR Case

Movant sought Rule 29.15 post-conviction relief.[3] Appointed counsel's [4] prolix amended motion asserted a multitude of poorly organized allegations of trial court error and ineffective assistance of counsel (IAC). The motion court, which had not been the trial court, ordered an evidentiary hearing.

Movant, the only witness, did not testify on any of his IAC claims. His brief testimony was limited to his claim that he was deprived of his chosen counsel. He testified that attorney Robert McGee visited him in jail a month before trial and agreed to represent him. Movant claimed that he signed an agreement and that one of his friends paid a retainer. He testified that he was surprised when Smith, not McGee, defended him at trial. After Movant testified, the motion court admitted as evidence the stalking trial transcript and court file, along with some direct appeal documents, and recessed to review the documentary evidence.

When court reconvened, the State argued in part that Movant had abandoned his IAC claims by not offering testimony on them. Movant's counsel replied that the underlying record in evidence was enough. The judge said he would sustain the motion and told Movant's counsel to prepare a proposed order.

In its written order entered seven months later, the motion court vacated Movant's conviction and ordered a new trial based on findings that Movant's PCR testimony was credible and that:

- Trial counsel was ineffective in not challenging the charge or verdict directing instruction on First Amendment grounds;

- Trial counsel gave ineffective advice as to self-incrimination;

---

2. He also indicated on other occasions that he would kill her.

3. Rule references are to Missouri Court Rules (2007) and statutory citations are to RSMo Cum.Supp.2006 except as otherwise indicated.

4. Not Movant's current counsel.

- Appellate counsel was ineffective in filing an incomplete legal file and not challenging the stalking statute's constitutionality; and

- The trial court erred in not allowing Movant to proceed to jury trial with counsel of his choice.

The State challenges all of these on appeal.

## General Legal Principles

 A successful IAC claim requires proof of (1) counsel's deficient performance, and (2) resulting prejudice. *See Dawson v. State*, 315 S.W.3d 726, 731 (Mo. App.2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If either prong is not met, the claim fails with no need to consider the other. *Id.*

 Courts assess counsel's performance with deference. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. "Counsel is strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment." *State v. Booker*, 945 S.W.2d 457, 459 (Mo.App.1997). Movant's burden is to overcome this presumption by a preponderance of the evidence. *State v. Holcomb*, 956 S.W.2d 286, 295 (Mo.App.1997).

As to prejudice, a different result must have been reasonably probable (not merely conceivable) but for counsel's deficiencies. *Dawson*, 315 S.W.3d at 731.

 We reverse only when our review of the whole record firmly and definitely convinces us that a mistake was made. *Tisius v. State*, 183 S.W.3d 207, 212 (Mo. banc 2006). We defer to the motion court's assessments of witness credibility. *Wilkins v. State*, 308 S.W.3d 778, 783 (Mo. App.2010).

## Analysis

### Point I

 Point I addresses Movant's claim, accepted by the motion court, of trial court error in not letting Movant be represented by McGee. We need not detail our doubts about this finding since the motion court clearly erred in considering a claim that Movant could have raised on direct appeal.

 If a claim "was apparent at trial, then it is an issue for direct appeal, not a Rule 29.15 proceeding." *Tisius*, 183 S.W.3d at 212. Rule 29.15 cannot be used to review matters which were or should have been raised on direct appeal. *State v. Tolliver*, 839 S.W.2d 296, 298 (Mo. banc 1992). Even constitutional claims that could have been appealed are not grounds for PCR unless fundamental fairness so requires, and then, only in rare and exceptional circumstances. *See Tisius*, 183 S.W.3d at 212; *Tolliver*, 839 S.W.2d at 298; *Glaviano v. State*, 298 S.W.3d 112, 114 (Mo.App.2009). Circumstances known by a movant during trial are not "rare and exceptional." *See, e.g., Glaviano*, 298 S.W.3d at 116 (no review of claim that trial court boosted sentence because movant exercised his right to trial); *Purvis v. State*, 215 S.W.3d 745, 748 (Mo.App.2007) (refusing to review alleged instructional error); *Phillips v. State*, 214 S.W.3d 361, 364–65 (Mo.App.2007) (no review of complaint that movant was denied right to represent himself).

By his own testimony, Movant was aware of this issue before voir dire. He witnessed and took part in relevant discussions of record on the first two days of trial. The motion court did not suggest, nor can we find, rare and exceptional circumstances justifying Rule 29.15 review of this trial error claim.[5]

---

5. Primarily citing *McCrary v. State*, 529 S.W.2d 467 (Mo.App.1975), Movant asks us to

Being firmly and definitely convinced that the motion court should not have considered Movant's choice of counsel claim, we grant Point I.

### Points II, III, & VI

■ These points address findings that trial and appellate counsel were ineffective in failing to assert First Amendment challenges. We begin by noting an apparent misconception by the motion court and Movant's counsel below.

■ Motion courts cannot simply review a record, then freely second-guess the many and varied decisions properly reserved to counsel's professional discretion. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it had proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

Thus, it was not enough when one movant, as in this case, "attempted to rebut the strong presumption that an attorney has rendered adequate assistance by relying only on the trial transcript." *Booker,* 945 S.W.2d at 459. "This does not rebut the presumption," *id.,* at least as to matters of strategy or professional judgment. "By presenting only the transcript, Booker provided the [motion] court no basis for concluding that his attorney did not have a strategic purpose in deciding not to object." *Id.*

With one exception, all points and motion court findings addressed hereafter involve Movant's complaints that his lawyers did not file some motion or assert some defense. It is beyond cavil that such decisions normally fall within counsel's judgment and discretion, are presumed to be reasonable and proper, and are not IAC unless a movant clearly proves otherwise.

Having offered no testimony to support these (or any other) IAC findings,

■ Movant's argument is fairly summarized in this excerpt from his brief:

> A search for any cases testing the constitutionality of RSMo § 565.225 for any constitutional defect produced no results. Nor did the [State] provide any cite to such a case. Therefore, the constitutionality of this statute has not been determined by any Missouri court. Any attorney of reasonable skill, diligence and competence would have raised the issue of the constitutionality of RSMo § 565.225....

This argument is self-defeating given the number of reported appeals from

---

hear his claim since it was not proved that he deliberately by-passed direct appeal. He portrays the "rare and exceptional circumstances" standard as an adoption of the deliberate by-pass rule that more recent cases have overlooked. We disagree.

*McCrary* involved former Rule 27.26, which expressly allowed "trial errors affecting constitutional rights [to] be raised even though the error could have been raised on direct appeal." *See* 529 S.W.2d at 471. Still, the motion court refused to consider McCrary's claim of constitutional trial error. *Id.* at 469. The conflict on appeal was between (1) the

rule's text, and (2) longstanding case law that PCR was not a substitute for direct appeal. *Id.* at 471–72. The appellate court resolved this conflict by citing the deliberate by-pass rule used by federal courts. *Id.* at 472. The facts showed deliberate by-pass, so the PCR claim was properly rejected despite the rule's plain language. *Id.* at 474.

Since Rule 29.15 reads differently than Rule 27.26, the deliberate by-pass rule has no play here. Even if it did, Movant (not the State) would have the burden to show why the claim was not raised on direct appeal.

§ 565.225 convictions. If no such case addressed the statute's constitutionality, one can hardly claim that "[a]ny attorney of reasonable skill, diligence and competence would have raised the issue. . . ." For that matter, a constitutional challenge to § 565.225 *was* rejected in *State v. Bernhardt*, 338 S.W.3d 830, 832–33 (Mo.App. 2011). We find no case suggesting that counsel is ineffective for not challenging a law presumed to be constitutional[6] and upheld in the only reported challenge to its constitutionality, especially absent any testimony on the issue. Indeed, threats of violence are not protected speech. *See, e.g., U.S. v. Gavin*, 583 F.3d 542, 548 (8th Cir.2009) (finding this view "well settled"); *U.S. v. Bellrichard*, 62 F.3d 1046, 1050 (8th Cir.1995) (First Amendment affords no protection for direct threats of force and violence toward others).

The motion court further erred as to appellate counsel, who is not to be deemed ineffective for failing to raise unpreserved error. *Hughes v. State*, 232 S.W.3d 596, 602 (Mo.App.2007).

We are definitely and firmly convinced of motion court error as to Points II, III, and VI. Points granted.

### Point IV

■ In its IAC findings "as to Self Incrimination," the motion court stated that counsel "failed to discuss a strategy," "failed to communicate with Movant as to any motion or defense," gave "no constructive advice" about Movant's right not to testify, and provided "ineffective advice" regarding self-incrimination. No evidence supports any of these, or the finding that "Movant stated that he would have declined to testify had he been properly advised." Movant, the only PCR witness, did not testify about any of his IAC claims.

Movant thus failed to rebut the strong presumption of competent assistance. *See Booker*, 945 S.W.2d at 459. More disconcertingly, key motion court findings lack evidentiary support or are demonstrably wrong.[7] We are firmly and definitely convinced of error; therefore, we grant Point IV.

### Point V

■ The motion court found appellate counsel ineffective in not filing a complete record on direct appeal. The following background is relevant.

A week before trial, the State moved to add Father to its witness list.[8] The prosecutor told the court that she had mistakenly left off Father's name, but he was mentioned "quite a few times" in police reports given in discovery. She said Father would testify consistently with those reports and that she had offered to produce him for pre-trial deposition or interview. In response, defense counsel said he had been busy when the State offered to produce Father and that Father's testimony would not be relevant. As to the latter, the prosecutor replied:

> [T]hat would be an issue that we can determine once he is getting ready to testify. If none of it's relevant then he

6. "A statute is presumed constitutional and will be found unconstitutional only if it clearly contravenes a specific constitutional provision." *State v. Pribble*, 285 S.W.3d 310, 313 (Mo. banc 2009).

7. We attribute these failings and the order's general tenor to the court's call upon Movant's counsel to prepare a proposed order, the risks of which are noted in *Neal v. Neal*, 281 S.W.3d 330, 337–38 (Mo.App.2009).

8. A criminal information must list all material prosecution witnesses. Rule 23.01(e). "Additional witnesses may be listed at any time after notice to the defendant upon order of the court." *Id.*

wouldn't be able to testify, but I don't think that has a huge bearing on whether or not he's endorsed as a witness. The witnesses in this case were determined based on the discovery and that name was left off the list. We can determine at a later time whether or not that's relevant at the time he's testifying or evening [sic] during a Motion in Limine.

The judge allowed Father to be endorsed, saying "I'll show it over Defendant's objection. This is not saying I'll still let him testify."

We rejected a challenge to this ruling on appeal because appellate counsel left the motion out of the legal file. Assuming *arguendo* that this failure satisfies *Strickland*'s first prong, Movant was prejudiced only if this claim was reasonably likely to win if properly presented. *See Evans v. State,* 85 S.W.3d 750, 752–53 (Mo.App. 2002).

The motion court, without expressly using the term "prejudice," found that "the issue is at least dispositive in the post-conviction hearing given trial counsels' ineffective advice as to self-incrimination and Mr. Smith's inquiry into the incident before the jury." The latter finding is nonsensical and the former, as we already have shown, is flawed.

A trial court enjoys broad discretion to allow late endorsement of witnesses. *State v. Downen,* 3 S.W.3d 434, 437 (Mo.App.1999). This means we will uphold the ruling unless it is so illogical, arbitrary, and unreasonable "as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

In deciding whether our judicial conscience is shocked, we consider *inter alia* whether the State intended surprise, acted deceptively or in bad faith meant to disadvantage the defense; whether the defense

actually was surprised and suffered disadvantage; and the foreseeability of the testimony given. *See State v. Pickens,* 763 S.W.2d 672, 673 (Mo.App.1988), the further findings of which we could almost copy:

> Defendant has failed to show the testimony was unanticipated, he was surprised and harmed, or that the state intended to disadvantage him. The testimony of the victim's sister at trial was basically the same as her earlier statements to the police and was cumulative of testimony by other witnesses. Thus, the trial court did not abuse its discretion and defendant's point is without merit.

*Id.* at 673–74. Indeed, this court has upheld witness endorsements as late as the second day of trial. *See State v. Trotter,* 241 S.W.3d 860, 862–63 (Mo.App.2007).

It is plain from the pretrial colloquy of record that the trial court's ruling was not illogical, arbitrary, unreasonable, or lacking in careful consideration, let alone shockingly unjust. That we did not reach the issue on direct appeal changes none of these. Absent prejudice, this claim should have been denied. Point V is granted.

## Conclusion

We reverse the motion court's order vacating the judgment of conviction and ordering a new trial in State v. Jonathan Melillo, Greene County No. 306CF10155. Pursuant to Rule 84.14, we enter judgment denying all relief.