EDWARD R. ARDINI, JR., JUDGE
Tanya L. Wheeler (Wheeler) appeals her conviction for first-degree statutory sodomy following a jury trial. Wheeler argues that the trial court abused its discretion in permitting the State to call two witnesses who were endorsed shortly before trial. Finding no error, we affirm.
Factual and Procedural Background[1]
Wheeler lived with Victim's biological father (Father) in Johnson County. Victim, who was thirteen years old at the time of the sexual abuse, stayed with them every other weekend. During one of these weekends, Wheeler walked in on Father inappropriately touching Victim. Victim testified that after observing Father's conduct, Wheeler appeared upset that Father had not involved her in the abuse of Victim. Thereafter, Wheeler began engaging in sexual acts against Victim.
Victim testified that Wheeler touched Victim's breasts and vagina with both her hands and mouth in addition to using a sex toy. These incidents occurred in the bedroom shared by Wheeler and Father. On multiple occasions when Victim and her friends were at Father's residence, Wheeler or Father would call Victim into their bedroom ostensibly because Victim was in trouble. Once separated from her friends, Wheeler would touch or rub Victim or use a "strap on" or "harness" to hold a sex toy in place and have sex with Victim. These sexual acts often occurred while Father was present in the room.
Victim described how on some occasions Father would masturbate while Wheeler used the sex toy on Victim. When Victim complained that the sex toy hurt, Wheeler told her that it would stop hurting soon while Father instructed Victim to keep quiet and allow Wheeler to do what she wanted. Victim stated that Wheeler used the sex toy on her at least ten times. She also described how Wheeler instructed her to touch Wheeler's breasts and vagina with her mouth. This occurred at least once while Wheeler was alone with Victim. Finally, Victim described occasions where Father would engage in sexual intercourse *43 with Wheeler while Wheeler touched and rubbed Victim's breasts and vagina. According to Victim, the last time the sexual abuse occurred was around April 5, 2009, which was the weekend proceeding Father's arrest for possession of child pornography.
Following Father's arrest, Victim informed her mother about Father's conduct, though she did not at that time disclose Wheeler's involvement. Victim's mother contacted police who instructed her to take Victim to ChildSafe of Sedalia, a child-advocacy-center, where Victim disclosed the details of being abused by Father. During the course of the investigation into the allegations, police interviewed Victim's friend, J.S., who implicated Wheeler in the abuse as well. A police investigator forwarded this information to the Johnson County Children's Division who, in turn, contacted Victim. Victim eventually acknowledged Wheeler's involvement and gave a second interview at ChildSafe during which she disclosed the details of the abuse committed by Wheeler.
Following the second ChildSafe interview, police interviewed Wheeler, who denied abusing Victim, but admitted that she owned several sex toys and gave her consent to the police to seize them. Victim identified one of these sex toys at trial as the one used on her by Wheeler. Wheeler was arrested and charged with one count of first-degree statutory sodomy.
In addition to calling Victim to testify at trial, the State also presented testimony from a police detective as well as J.S. and R.B. who were friends with Victim during the period of abuse. J.S. testified that on multiple occasions while she was at Father's residence, Father or Wheeler would call Victim into their bedroom for allegedly doing something wrong. She stated that Victim would typically return after twenty or thirty minutes. R.B. provided nearly identical testimony but added that Victim would be upset and crying when she returned from the bedroom. Portions of Victim's recorded interviews with ChildSafe were also played for the jury.
Wheeler testified that she had never inappropriately touched Victim and that she was unaware of the abuse by Father. She did not dispute that Victim would occasionally be called into the bedroom when she was in trouble for the purpose of imposing discipline and that Victim sometimes left the bedroom in tears. She stated that Victim was called into the bedroom "because nobody likes to be berated in front of their friends and we tried to show her some respect." Wheeler also called a criminalist from the highway patrol crime lab who testified that Victim's DNA was not found on the sex toys recovered from Wheeler; a woman Wheeler had previously lived with who testified that she discovered a sex toy under a pillow in the room where Victim slept when at Father's residence; a friend of Victim who testified that Victim and Wheeler appeared to have a normal relationship and that Victim had taken her into Father and Wheeler's bedroom and showed her sex toys in a nightstand; and a children's division investigator who testified that Victim did not report that Wheeler had sexually abused her when Victim made her initial allegations against Father.
The jury was given three alternative verdict directors based on three different acts of sodomy: (1) putting a sex toy in Victim's vagina; (2) finger-to-vagina sodomy; and (3) mouth-to-vagina sodomy. The jury found Wheeler guilty on each submitted verdict director. Wheeler waived jury sentencing, and she was sentenced to 14 years' imprisonment. She now appeals.
Discussion
Wheeler's sole point on appeal is that the trial court abused its discretion in permitting *44 the State to call J.S. and R.B. as witnesses during the trial. She argues that her right to a fair trial was violated based on the late endorsement of these witnesses which provided her insufficient time to investigate and respond to their testimony.
Wheeler did not raise an objection to either witness during the trial.[2] Where no objection to the admission of evidence is made, we will review only for plain error. State v. McElroy , 520 S.W.3d 493, 495 (Mo. App. W.D. 2017). "Plain error is found when the alleged error facially establish[es] substantial grounds for believing a manifest injustice or miscarriage of justice occurred." State v. Taylor , 466 S.W.3d 521, 533 (Mo. banc 2015) (quoting State v. Driskill , 459 S.W.3d 412, 426 (Mo. banc 2015) ) (internal quotation marks omitted). "Such errors must be 'evident, obvious, and clear.' " Id. (quoting State v. Hunt , 451 S.W.3d 251, 260 (Mo. banc 2014) ).
Section 545.070 and Rule 23.01(e) both require the names of all material witnesses for the State to be affixed to the indictment.[3] However, "additional witnesses may be listed at any time after notice to the defendant upon order of the court." Rule 23.01(e); see also State v. Tyler , 677 S.W.2d 368, 369 (Mo. App. E.D. 1984) ("[Rule 23.01] requires that the indictment or information shall list the names of all material witnesses for the prosecution 'except rebuttal witnesses.' Additional witnesses may be listed at any time after notice to the defendant upon order of the court."). "The trial court ... has broad discretion in determining whether a late endorsed witness should be permitted to testify ..." and we will reverse only if the trial court's decision "results in fundamental unfairness." State v. Carl , 389 S.W.3d 276, 283 (Mo. App. W.D. 2013) (quoting State v. Trotter , 241 S.W.3d 860, 862 (Mo. App. W.D. 2007) ). "Fundamental unfairness occurs when the defendant experiences genuine surprise, and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence." Id.
The indictment against Wheeler was filed on January 15, 2010, and listed two witnesses: Victim and the investigating detective. The record reveals no request from Wheeler under Rule 25.03 seeking the names and addresses of individuals the State intended to call as witnesses.[4] Instead, Wheeler filed a motion in limine on March 16, 2015, that, among other things, sought to prohibit the State from calling *45 any witness not already endorsed.[5] Wheeler's counsel stated that the previous prosecuting attorney had indicated that she did not intend to call any witness that had not been endorsed. The current prosecuting attorney,[6] in turn, pointed out that she had no knowledge of what was said by the previous prosecutor, that she intended to give Wheeler a complete list of witnesses she planned to call at trial, that information concerning these witnesses had been included in the State's previously disclosed discovery, and that Wheeler's counsel had deposed a number of witnesses included in that discovery who had similarly not been listed in the indictment. The trial court resolved the issue by ordering an exchange of witness lists within the next three days. The State complied with the trial court's order and provided its witness list on March 19, 2015, which included J.S. and R.B. among the nine witnesses listed.
Wheeler does not contest the State's assertion that information relating to both J.S. and R.B. was included in the State's discovery response and thus the existence of both individuals was known to her for several years prior to the commencement of trial. The record also supports the State's contention that Wheeler deposed other witnesses who had been included in the State's discovery but were not endorsed on the indictment. As a result, Wheeler's argument that the State's calling of these witnesses to testify at trial resulted in genuine surprise is unfounded. See State v. Caito , 783 S.W.2d 138, 139 (Mo. App. E.D. 1989) (Defendant was not prejudiced by the State calling two witness who had not been endorsed at all, as the defendant knew about the witnesses based on disclosures made in discovery.); State v. Strawther , 476 S.W.2d 576, 580 (Mo. 1972) (Defendant and his counsel could not be considered surprised in the legally acceptable sense of the term by the late endorsement of a witness whom it would be reasonable to anticipate the State calling). These witnesses were not, as characterized by Wheeler, last minute additions made in bad faith by the State, but rather, were witnesses Wheeler reasonably should have known the State intended to call. Moreover, the State confirmed its intention to call these witnesses more than two weeks prior to trial, providing Wheeler ample opportunity to pursue any necessary investigation.[7] Given these facts, Wheeler cannot maintain that the calling of these witnesses resulted in fundamental unfairness.[8]
*46 Therefore, the trial court did not err in permitting J.S. and R.B. to testify.
Even if this court were to conclude that the trial court erred in permitting J.S. and R.B. to testify, Wheeler cannot demonstrate that she suffered prejudice necessary to prevail under a plain error review standard. The testimony of both witnesses was very brief (together they account for only 25 transcript pages) and was focused on the fact that Victim would at times be called into Father and Wheeler's bedroom, ostensibly to be disciplined out of sight of her friends, and would return twenty to thirty minutes later, often in tears. This evidence corroborated the testimony provided by Victim. More importantly, the testimony of these two witnesses was consistent with Wheeler's own testimony rendering any prejudice claim wholly untenable. See State v. Pickens , 763 S.W.2d 672, 674 (Mo. App. E.D. 1988) (Defendant failed to show prejudice stemming from the late endorsement of the victim's sister as her testimony at trial was basically the same as her earlier statements to the police and was cumulative of the testimony of other witnesses.); Melillo v. State , 380 S.W.3d 617, 624 (Mo. App. S.D. 2012) (citing same with approval).
Conclusion
The judgment of the trial court is affirmed.
All concur.

We view the evidence in a light most favorable to the verdict. State v. Baumruk , 280 S.W.3d 600, 607 (Mo. banc 2009).

Wheeler argues in her brief that she did object during the trial. However, in supporting this claim she references only the arguments raised at a pretrial conference on her motion in limine. "A ruling on a motion in limine is interlocutory and subject to modification at trial." State v. Blurton , 484 S.W.3d 758, 775 (Mo. banc 2016). "Accordingly, a 'motion in limine , in and of itself, preserves nothing for appeal.' " Id. (quoting State v. Cole , 71 S.W.3d 163, 175 (Mo. banc 2002) ). Therefore, in order to preserve her claim of error, it was necessary for Wheeler to make a specific objection at the time the State called the witnesses at trial. See State v. Mickle , 164 S.W.3d 33, 55 (Mo. App. W.D. 2005). The record reveals no objection was made at trial. On the contrary, when the State called J.S. to testify, the trial court specifically inquired whether the defense had any issue with the witness, to which defense counsel responded "no."

All statutory citations are to the Revised Statutes of Missouri, 2000, as supplemented prior to January 1, 2017. All Rule citations are to Missouri Supreme Court Rules (2017) unless otherwise noted.

Wheeler did file a motion under Rule 25.04 seeking disclosure of photographs, DNA-test results, recorded interviews, text messages, and computer discs two weeks after the filing of the indictment.

The motion claimed that the State had endorsed four witnesses; however, at the hearing held on the motion, Wheeler's counsel indicated that he had been mistaken and that he believed that the State had only endorsed two witnesses.

The prosecuting attorney then handling the case assumed office on January 1, 2015, a little over two months before this hearing.

While we recognize that timing is only one factor in determining whether the trial court abused its discretion by permitting the late endorsement of a witness, it deserves to be noted that Missouri courts have upheld witness endorsements occurring much closer to trial than happened in this case. See State v. Greathouse , 627 S.W.2d 592, 595 (Mo. 1982) (trial court did not abuse its discretion in permitting the State to endorse a witness four days prior to trial); State v. Carl , 389 S.W.3d 276, 283 (Mo. App. W.D. 2013) (trial court did not abuse its discretion in permitting the State to endorse a witness five days prior to trial); Melillo v. State , 380 S.W.3d 617, 623 (Mo. App. S.D. 2012) (trial court did not abuse its discretion in permitting the State to endorse a witness a week prior to trial); State v. Trotter , 241 S.W.3d 860, 862 (Mo. App. S.D. 2007) (trial court did not abuse its discretion in permitting the State to endorse a witness on the second day of trial).

We additionally note that despite the trial court expressing a willingness to continue the trial date on two separate occasions subsequent to the denial of her motion in limine in order to deal with an unrelated evidentiary issue, Wheeler never requested a continuance based on a need to perform additional investigation relative to these two witness. When a defendant is presented with an opportunity to continue a case in order to scrutinize a newly endorsed witness but fails to avail herself of that option, she cannot later claim that she was prevented from engaging in meaningful efforts to consider and prepare a strategy for addressing that witness. State v. Carl , 389 S.W.3d 276, 284 (Mo. App. W.D. 2013) (Defendant did not suffer fundamental unfairness following late endorsement of a witness as he was given the opportunity to continue the case but declined to do so.); State v. Lamphier , 745 S.W.2d 166 (Mo. App. W.D. 1987) (Defendant was not denied an opportunity to adequately prepare for the testimony of an unendorsed witness as the trial court had offered to continue the case in order to avoid prejudice).