**Kenneth L. ROBERTS, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. ED 104750

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: December 19, 2017

790

FOR APPELLANT: Maleaner R. Harvey, Missouri Public Defender's Office, 1010 Market Street, Suite 1100, St. Louis, Missouri 63101.

FOR RESPONDENT: Shaun J. Mackelprang, Assistant Attorney General, PO Box 899, Jefferson City, Missouri 65102.

Philip M. Hess, Judge

### Introduction

Kenneth R. Roberts appeals the denial of his Rule 29.15[1] motion for post-conviction relief. Roberts raises four points on appeal. In point I, Roberts alleges the motion court clearly erred in denying his amended motion because he was deprived of due process and a public trial when the

---

1. All references to rules are to the Missouri Supreme Court Rules (2017) unless otherwise indicated.

bailiff closed the courtroom and removed members of his family to make room for the venire panel before voir dire. In points II, III, and IV, Roberts contends his trial counsel was ineffective for failing to: 1) sufficiently advise him about testifying at trial; 2) cross-examine the victims about the size of his penis; and 3) present mitigating evidence and argue for a more favorable sentence during the penalty phase of his trial. Finding no clear error, we affirm.

### Factual and Procedural Background [2]

On July 15, 2009, Roberts invited his twenty-year-old friend, W.A., over to his house. Roberts touched and kissed W.A. and she asked him to stop. Roberts stopped but approximately ten minutes later he hit W.A. in the face with a liquor bottle, pushed her onto the floor, and told her he would have sex with her. W.A. told Roberts no and that she was menstruating. Roberts ordered W.A. to perform oral sex on him and forced his penis in her mouth. Eventually W.A. convinced Roberts to allow her to leave.

On August 13, 2009, Roberts invited nineteen-year-old N.S. over to his grandmother's home. Roberts offered N.S. some liquor. When N.S. declined, Roberts held a knife to her throat, cut her, and told her to be quiet. N.S. tried to leave and Roberts hit her in the back of her head with a liquor bottle, knocking her unconscious. When N.S. awoke, Roberts was on top of her, forcing his penis in her mouth. N.S. screamed, and Roberts threatened to kill her. Roberts rubbed his penis against N.S. and stabbed her in the back of her leg with a knife. N.S. escaped when Roberts'

grandmother appeared and asked what was going on.

Roberts was charged with two counts of forcible sodomy with a deadly weapon, two counts of assault in the first degree, two counts of armed criminal action, and one count of felonious restraint arising out of the incidents involving W.A. and N.S. (collectively "Victims").

Trial began February 25, 2013. Prior to the start of voir dire, the bailiff removed all persons in the courtroom so there would be space for all members of the sixty-person venire panel. Voir dire was then conducted and the jury panel was selected with no objection or mention made on the record about anyone being excluded from the courtroom during voir dire.

At trial, the State presented the testimony of nine witnesses, including Victims. The defense presented testimony from two witnesses but Roberts did not testify. The jury found Roberts guilty on all counts.

During the penalty phase of the trial the State presented evidence that Roberts had previously pled guilty to two counts of second-degree robbery and one count of attempted first-degree robbery and was currently serving a ten-year sentence in the Missouri Department of Corrections. The State argued the jury should recommend the maximum sentence on each count. Defense counsel presented no evidence but argued that a maximum sentence would not be appropriate and asked the jury to recommend a sentence somewhere in the middle of the sentence range for each count. The range for each count

2. We note that the record on appeal does not contain the voir dire, trial, or sentencing transcripts, all of which are necessary to the determination of the questions presented. This alone is a sufficient ground for us to dismiss this appeal. See *Evans v. State*, 70 S.W.3d 483, 486 (Mo. App. W.D. 2002); Rule

29.15(a); Rule 81.12. Nevertheless, these transcripts were filed with the motion court and we take judicial notice of them in order to gratuitously review Roberts' claims. See *Pollard v. State*, 807 S.W.2d 498, 502 (Mo. banc 1991); *Franklin v. State*, 655 S.W.2d 561, 563 (Mo. App. E.D. 1983).

was: 1) forcible sodomy with a deadly weapon—10 years to life; 2) assault in the first degree—5 to 15 years; 3) armed criminal action—3 years to life; and 4) felonious restraint—2 to 7 years. The jury returned these verdicts for each respective count: 1) forcible sodomy with a deadly weapon—15 years; 2) assault in the first degree—15 years; 3) armed criminal action—15 years; 4) felonious restraint—5 years; 5) forcible sodomy with a deadly weapon—25 years; 6) assault in the first degree—15 years; and 7) armed criminal action—20 years.[3] The court set the matter for sentencing.

Roberts filed a motion for new trial. On April 18, 2013, Roberts' sentencing hearing was held. After defense counsel argued the motion for new trial which was denied, the State read N.S.'s victim impact statement to the court. The court then sentenced Roberts according to the jury's verdicts, which resulted in consecutive terms of imprisonment totaling 110 years. The court questioned Roberts regarding the assistance of counsel he received, but Roberts declined to answer the court's questions. The court found no probable cause to believe Roberts had received ineffective assistance of counsel.

Roberts appealed and his convictions were affirmed on direct appeal. *State v. Roberts*, 437 S.W.3d 828 (Mo. App. E.D. 2014). Roberts did not raise his claim he was deprived of due process and a public trial when the bailiff closed the courtroom and removed members of his family before voir dire.

On October 24, 2014, Roberts filed his pro se Rule 29.15 motion. On December 4, 2014, counsel entered his appearance on Roberts' behalf and requested an additional thirty days to file an amended motion which the court granted that day. On March 4, 2014, Roberts filed an amended

Rule 29.15 motion, alleging he was deprived of his right to a public trial when the courtroom was closed and his family was excluded during voir dire. Roberts also alleged numerous claims of ineffective assistance of trial counsel, including as is relevant to here, that counsel misadvised him about the significance of not testifying, failed to cross-examine Victims about Roberts' penis, and presented no evidence or argument for a favorable sentence during the penalty phase of Roberts' trial.

On October 30, 2015, Roberts' post-conviction counsel deposed Roberts' trial counsel. The motion court found the deposition was admitted into evidence by Roberts' counsel without objection. In his deposition, Roberts' trial counsel denied advising Roberts to not testify at trial and testified that Roberts was adamant he did not want to testify because had a prior criminal record. With regard to Roberts' claim about his penis, counsel explained that Roberts' mother told him she thought Roberts had a small penis but Roberts said nothing about it and he could not recall if he and Roberts ever discussed it. Counsel explained that he did not cross-examine Victims about Roberts' penis because he did not believe he "was going to get a lot of traction in pursuing that line" of questioning, that he thought the jury might find the questioning offensive, and because he had no evidence to impeach Victims with other than Roberts' mom's statement.

As for Roberts' argument about counsel's performance during the sentencing phase of Roberts' trial, counsel testified that he argued for the jury to sentence Roberts somewhere in the middle of the range available because he wanted the jury to give Roberts a reasonable sen-

---

**3.** The record on appeal does not contain the jury's verdicts or the trial court's sentence and judgment but we obtained them from the record on the direct appeal and take judicial notice of them. See *Pollard*, 807 S.W.2d at 502.

tence. He explained that he presented no evidence before the court because they had discussed what the judge was going to do in chambers and the judge had already made up his mind. He said "[a]nything that happens after that is theater," and was "not going to affect the judge's decision." He testified that he argued to the court in chambers that "this was a 20- to 25-year offense at best," and he pointed out several other similar cases and examples to support his argument. When asked if there was any mitigating evidence he could have presented, counsel stated that "the judge was well aware that [Roberts] had psychological issues, schizophrenic," that the time to mitigate the situation is before trial, and that the judge would do whatever he wanted to do.

On March 22, 2016, the court entered an order denying all of Roberts' ineffective assistance claims without an evidentiary hearing, but set Roberts' claim alleging the denial of a public trial for an evidentiary hearing. At the hearing, Roberts' mother testified that she met her mother, sister, Roberts' father, Roberts' grandmother, and a family friend at the courthouse on the first day of Roberts' trial. She testified that they were all sitting in the courtroom when the judge came in and indicated they would call for the jury panel. She testified that the bailiff motioned for them to leave, that she told him no and indicated that they wanted to stay, but the bailiff told them they had to go.

Roberts' trial counsel testified that he recalled seeing Roberts' family in the courtroom the morning before voir dire and knew that they were not in the courtroom during voir dire because every seat was filled with potential juror members. He testified that he never consented to closure of the courtroom and the topic never came up. He testified that he never waived Roberts' right to a public trial and would not have if the issue had been

raised. He testified that he did not object to Roberts' family members being removed from the courtroom because he was not aware it had happened because he was focused on voir dire.

Roberts testified that on the morning of trial his mother, grandmother, aunt, father, and a family friend were sitting in the courtroom before the jury panel was brought in and he saw the bailiff tell them to leave. He testified that his mother stood up and tried to get his lawyer's attention but she was unsuccessful. He said he and his attorney were working on voir dire at the time. He testified that he was informed he had a right to a public trial after the trial and he would have raised that right had he known about it. He testified that he did not waive his right to a public trial and did not consent to the closure of the courtroom.

The bailiff from Roberts' trial testified that the judge instructed him to bring the jury panel into the courtroom. The bailiff noticed some people in the courtroom and he explained to them that he was going to get the jury panel and that they would take up all the seating in the courtroom. He asked them to wait in the hall until the end of voir dire. He testified the people in the courtroom cooperated with his request and no one asked to remain in the courtroom. He testified that the judge did not ask him to clear the courtroom for the jury panel and that he did that on his accord.

The judge from Roberts' trial testified that when he was in his chambers he asked his bailiff to go get the jury panel, that he never asked his bailiff to clear the courtroom, and that he was not aware that anyone had been removed from the courtroom. He testified that had a request been made to make room for people in the courtroom he would have tried to accommodate that request, if possible. He testified that Roberts or his attorney never

waived the right to a public trial. He testified that no findings were made regarding closing the courtroom because they were never requested. Following this evidence, the court took the matter under advisement.

On July 8, 2016, the court issued its findings, conclusions, and judgment, denying all of Roberts' claims. Specifically, the court found Roberts' alleged violation of his right to a public trial claim was not cognizable in Rule 29.15 proceeding. On his claims of ineffective assistance, the court found that Roberts failed to allege facts warranting relief for his claim he was misadvised on the significance of not testifying, that trial counsel's explanation for not cross-examining Victims regarding Roberts' penis was reasonable and acceptable trial strategy, and that Roberts failed to show how he was prejudiced by the decision not to call witnesses during the penalty phase of trial. This appeal follows.

## Standard of Review

Appellate review of the denial of a Rule 29.15 motion is limited to determining whether the motion court's findings, conclusions, and judgment are clearly erroneous. *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006). Findings and conclusions are clearly erroneous if after a review of the entire record we are left with the definite and firm impression that a mistake has been made. *Id.* We presume that the motion court's findings are correct. *Id.*

An evidentiary hearing is not required with every Rule 29.15 motion. See Rule 29.15(h). "To be entitled to an evidentiary hearing, a movant must: (1) allege facts, not conclusions that, if true, would warrant relief; (2) these facts must raise matters not refuted by the record and files in the case; and (3) the matters complained of must have resulted in prejudice to the movant." *Barnett v. State*, 103 S.W.3d 765,

769 (Mo. banc 2003) (citing *State v. Brooks*, 960 S.W.2d 479, 497 (Mo. banc 1997)). "An evidentiary hearing is not a means by which to provide movant with an opportunity to produce facts not alleged in the motion." *Brooks*, 960 S.W.2d at 497 (citing *White v. State*, 939 S.W.2d 887, 904 (Mo. banc 1997)). Further, "[a]s distinguished from other civil pleadings, courts will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000) (citing *White*, 939 S.W.2d at 893).

Rule 29.15, however, is not a substitute for direct appeal. *McIntosh v. State*, 413 S.W.3d 320, 331 (Mo. banc 2013). Claims of trial error will only be considered in a Rule 29.15 motion where fundamental fairness requires, and then, only in rare and exceptional circumstances. *Id.* This applies to constitutional claims as well. *State v. Tolliver*, 839 S.W.2d 296, 298 (Mo. banc 1992). Circumstances known by a movant during trial are not "rare and exceptional." *Melillo v. State*, 380 S.W.3d 617, 621 (Mo. App. S.D. 2012).

Claims of ineffective assistance can be raised in a Rule 29.15 motion. Rule 29.15(a). To prove the ineffective assistance of trial counsel, the movant must satisfy this two-prong test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): 1) that counsel's performance did not conform to the degree of skill and diligence of a reasonably competent attorney; and 2) that as a result thereof, the movant was prejudiced. *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009). The movant must overcome a strong presumption that counsel's performance was reasonable and effective to meet the first prong. *Id.* at 176. To overcome this presumption, the movant must identify specific acts or omissions of counsel that, given all the circumstances, fell

outside the wide range of professional competent assistance. *Davis v. State*, 486 S.W.3d 898, 906 (Mo. banc 2016). Trial strategy decisions may be a basis for finding ineffective assistance of counsel only if that decision was unreasonable. *Id.*

 To satisfy the second prong, the movant must show there was a reasonable probability that, but for counsel's alleged errors, the outcome would have been different. *Zink*, 278 S.W.3d at 176. If either the performance or the prejudice prong is not met, then we need not consider the other and the claim of ineffective assistance must fail. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).

## Discussion

### I. The Motion Court Did Not Clearly Err in Denying Roberts' Public Trial Claim.

In point I, Roberts claims the motion court clearly erred in denying his claim he was deprived of due process and his right to a public trial when the bailiff closed the courtroom during voir dire, excluding his family members. The State contends Roberts' claim is not cognizable in a Rule 29.15 motion. The motion court found this claim was not cognizable in this proceeding because it should have been raised on direct appeal and there were no rare and exceptional circumstances present permitting the court to consider it. We conclude the motion court did not clearly err in denying Roberts' claim.

Recently, the United States Supreme Court addressed a case factually similar to ours. In *Weaver v. Massachusetts*, ─── U.S. ───, 137 S.Ct. 1899, 1906, 198 L.Ed.2d 420 (2017), the courtroom was closed to the public for two days of the jury selection process due to the space needed to accommodate the pool of potential jury members. So when petitioner's mother and her minister came to the courtroom, they were turned away. *Id.* Defense counsel neither objected to the closure at trial nor raised the issue on direct appeal because he believed the closure was constitutional. *Id.* Petitioner claimed his trial counsel was ineffective for failing to object to the closure of the courtroom during jury selection. *Id.*

The Court assumed for its decision that counsel provided ineffective assistance in failing to object and specifically addressed whether a defendant must demonstrate prejudice where a structural error is neither preserved nor raised on direct appeal but is later raised via a claim alleging ineffective assistance of counsel. *Id.* In addressing this claim, the court discussed two doctrines: structural error and ineffective assistance of counsel. *Id.* at 1907.

 The public-trial right, which includes jury selection, is a structural right, meaning that the government may not deprive the defendant of a new trial by showing that the error was harmless beyond a reasonable doubt. *Id.* at 1910. "Thus, in the case of a structural error where there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to 'automatic reversal' regardless of the error's actual 'effect on the outcome.' " *Id.* at 1910 (quoting *Neder v. United States*, 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).

 When the defendant does not preserve a structural error on direct review and raises it in an ineffective-assistance-of-counsel claim, however, prejudice is not shown automatically. *Weaver*, 137 S.Ct. at 1910-11. "Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case, or . . . to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair." *Id.* at 1911.

"The reason for placing the burden on the petitioner ... derives from both the nature of the error, ... and the difference between a public-trial violation preserved and then raised on direct review and a public-trial violation raised as an ineffective-assistance-of-counsel claim." *Id.* at 1912. "[W]hen a defendant objects to a courtroom closure, the trial court can either order the courtroom opened or explain the reasons for keeping it closed." *Id.* at 1912. "[W]hen a defendant first raises the closure in an ineffective-assistance claim, however, the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for closure." *Id.* "[T]he systemic costs of remedying the error are diminished to some extent" on direct review due to less time elapsing for witness' memories and the preservation of physical evidence. *Id.* "[T]he factors and circumstances that might justify a temporary closure are best considered in the regular appellate process and not in the context of a later proceeding, with its added time delays." *Id.* The finality interest in criminal proceedings is also more at risk in a post-conviction proceeding. *Id.* "These differences justify a different standard for evaluating a structural error depending on whether it is raised on direct review or raised in a claim alleging ineffective assistance of counsel." *Id.*

"In sum, '[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial,' thus undermining the finality of jury verdicts." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)). "For this reason, the rules governing ineffective-assistance claims 'must be applied with scrupulous care.'" *Weaver*, 137 S.Ct. at 1912 (quoting *Premo v. Moore*, 562 U.S. 115, 122, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011)).

■ Here, like in *Weaver*, Roberts' counsel did not object at trial or raise this claim in his direct appeal. Roberts has raised it for the first time in his post-conviction proceeding. Unlike in *Weaver*, however, Roberts has not argued that his trial counsel was ineffective for not objecting to the courtroom being closed during voir dire. Instead, Roberts argues that the court erred in denying his right to a public trial and he should be given a new trial. We find Roberts' claim fails for a number of reasons.

■ First, it is well established that allegations of trial error involving constitutional violations are not cognizable in a Rule 29.15 motion without showing exceptional circumstances for not raising the grounds on direct appeal. *Matthews v. State*, 175 S.W.3d 110, 115 (Mo. banc 2005); *Strosnider v. State*, 514 S.W.3d 34, 40 (Mo. App. S.D. 2016). Roberts only explanation for not raising this claim on direct appeal is that the claim was not obvious from the record. This is no showing of exceptional circumstances for not raising his claim on direct appeal.

Further, Roberts' explanation is refuted by both his own and his trial counsel's testimony at the evidentiary hearing. Both testified they were aware that Roberts' family had been removed from the courtroom during voir dire. See *McIntosh*, 413 S.W.3d at 331 (finding movant's claim alleging prosecutorial misconduct not cognizable in his Rule 29.15 motion in part because the misconduct complained about was apparent at trial); *Melillo*, 380 S.W.3d at 621-22 (denying movant's claim alleging trial court error as not rare and exceptional when movant's own testimony showed he was aware of the issue at trial). Thus, this claim could and should have been raised in Roberts' direct appeal. We do not conclude the motion court's finding that

this claim was not cognizable here to be clearly erroneous.

Second, even if Roberts' claim was cognizable, we conclude the same reasoning in *Weaver* requiring prejudice to be shown in a claim alleging ineffective assistance for failing to object to the courtroom being closed during voir dire also must be shown in a claim alleging court error for violating a defendant's right to a public trial. 137 S.Ct. at 1912. This is because the reason for placing the burden on Roberts is the same. Had Roberts objected to the courtroom closure, the trial court would have had the opportunity to address the situation. *Id.* The judge testified he would have done as much at the evidentiary hearing, testifying he would have tried to accommodate a request for everyone to be in the courtroom if possible. But because Roberts did not raise it, the trial court was deprived of any opportunity to address the situation and did not even know it had occurred. *Id.* Further, Roberts' claim would also have been best considered on direct appeal and not here on post-conviction review. *Id.* Roberts' trial occurred in February 2013 and his direct appeal was decided in July 2014. Roberts' hearing on this claim did not occur until April 2016. At the hearing there was conflicting testimony about whether the judge was present when the bailiff removed Roberts' family and friends, about whether Roberts' family and friends left the courtroom without requesting to stay, and other inconsistencies with regard to how and what occurred. Had this issue been decided considered on direct appeal perhaps these inconsistencies would be absent. Finally, the costs and uncertainties of Roberts having a new trial are also greater now given the time that has elapsed. *Id.* Thus, the finality interest is more at risk. *Id.*

For these reasons, we find that Roberts had the burden to show how he was prejudiced, and he has failed to do so here. A review of the voir dire proceedings confirms this as there is nothing to suggest that any potential harms flowing from a courtroom closure occurred in this case. See *Weaver*, 137 S.Ct. at 1913; *State v. Jones*, 530 S.W.3d 525, 531-32 (Mo. App. E.D. 2017). Point denied.

## II. Roberts' Claim That He Wanted to Testify at Trial Fails to Allege Facts, Not Conclusions, Warranting Relief and is Refuted by the Record.

 In point II, Roberts claims he received ineffective assistance of trial counsel because counsel failed to advise him adequately about taking the witness stand in his own defense. Roberts contends that he wanted to testify at trial regarding the incident with N.S. because he would have provided "key evidence," but counsel did not allow him to testify. The State argues Roberts failed to allege any facts warranting relief. The motion court denied this claim, agreeing with the State's argument that Roberts failed to allege any facts warranting relief. This finding was not clearly erroneous.

First, as the motion court found, Roberts alleged no facts that would warrant relief. Roberts' assertion he would have provided "key evidence" is conclusory and Roberts has not alleged any facts that would support his claim. See *Morrow*, 21 S.W.3d at 823-24.

Second, Roberts' claim is refuted by the record. When Roberts' counsel was asked if he advised Roberts not to testify, counsel denied doing so. Counsel testified that Roberts was adamant he did not want to testify. Counsel explained that Roberts had a prior criminal record and did not want to testify, did not want to explain his side of the story, and believed that the lack of physical evidence of sexual assault would limit his exposure to the physical assault cases. See *State v. George*, 937 S.W.2d 251, 257 (Mo. App. E.D. 1996) (de-

nying defendant's claim that trial counsel refused to let him testify because it was refuted by the record). Point denied.

### III. Trial Counsel Was Not Ineffective for Failing to Cross-examine Victims About the Size of Roberts' Penis.

In point III, Roberts claims he received ineffective assistance of trial counsel because counsel failed to cross-examine Victims about the size of his small, undeveloped penis. Roberts asserts that had trial counsel asked Victims to describe his penis they could not have done so because they never saw it and were not forced to perform oral sex on him. The State argues Roberts cannot prove the performance or prejudice prong. The motion court found trial counsel's explanation for not cross-examining Victims regarding Roberts' penis was reasonable and acceptable trial strategy. This finding was not clearly erroneous.

Trial strategy decisions may be a basis of ineffective counsel only if that decision was unreasonable. *McIntosh*, 413 S.W.3d at 324. Subjects covered during cross-examination are generally matters of trial strategy and left to the judgment of counsel. *State v. Mahoney*, 165 S.W.3d 563, 568 (Mo. App. S.D. 2005).

Here, the motion court's finding that trial counsel's decision not to cross-examine Victims about the size of Roberts' penis was not unreasonable is not clearly erroneous. While trial counsel testified that Roberts' mother told him that Roberts did not have a fully developed penis, counsel testified Roberts never mentioned this and he had no evidence to support Roberts' mother's claim. Further, counsel explained he believed pursuing that line of questioning would be unhelpful and might be offensive to the jury. Counsel's decision was not unreasonable. Point denied.

### IV. Roberts Failed to Demonstrate Any Prejudice From Counsel's Performance During the Penalty Phase of Roberts' Trial.

In point IV, Roberts claims he received ineffective assistance of trial counsel because counsel failed to present mitigating evidence and argue for a more favorable sentence at the sentencing phase of his trial. Specifically, Roberts argues trial counsel failed to present the testimony of his mother, father, or any member of his family or any person who could "humanize" Roberts prior to sentencing, and that trial counsel failed to put on any evidence or argue for any sentence to the jury or the judge during the sentencing phase of trial. The State argues the motion court did not clearly err in denying this claim without an evidentiary hearing because Roberts failed to allege facts warranting relief. The motion court found that Roberts failed to show how he was prejudiced. Specifically, the motion court found Roberts claim failed to state how any of his suggested witnesses would have "humanized" him, and that the possible "humanization" of Roberts was too vague to support an ineffective assistance claim. This finding was not clearly erroneous.

There is a strong presumption counsel's failure to call a witness at sentencing is a matter of reasonable trial strategy and will not support an ineffective assistance of counsel claim. *Routt v. State*, 493 S.W.3d 904, 911 (Mo. App. E.D. 2016). In order for a movant to establish the performance component of a claim counsel was ineffective for failing to investigate and call a witness at sentencing, the movant must allege sufficient facts, not refuted by the record, showing: (1) counsel's decision involved something other than reasonable trial strategy; (2) the witness could have been located through a reasonable investigation; (3) the witness would have testified if called; and (4) the witness's testimony would have aided in the mov-

ant's defense. *Id.* at 911-12. To demonstrate prejudice a movant must show that but for counsel's alleged deficient performance during sentencing, there is a reasonable probability he would have received a lesser sentence. *Id.* at 914-15. The questions of prejudice from failing to call all available witnesses is a matter that can only be determined case-by-case depending on the totality of the circumstances. *Id.* at 915.

Here, the trial court did not clearly err in finding that Roberts failed to allege sufficient facts to show that any of his proposed witness's testimony would have aided in his defense. While Roberts alleges that numerous family members or any person could "humanize" him, he fails to allege what any witness's testimony would have been or how any testimony could help "humanize" him. Further, Roberts has not demonstrated a reasonable probability he would have received a lesser sentence had counsel made any different argument than the one made or had called any witnesses. For those reasons, we cannot find that the motion court clearly erred. Point denied.[4]

### Conclusion

For the reasons stated above, the motion court did not err in denying Roberts' amended motion. The motion court's denial of relief is not clearly erroneous. We affirm.

Lisa P. Page, P.J. and Roy L. Richter, J. concur.

4. We do note that while trial counsel testified he argued for a lesser sentence in chambers, this argument is not in the record on appeal and counsel should make sure to develop the

record for appeal, regardless of counsel's belief that it would merely be "theater" since the judge had already made up his mind.