

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| JORDAN D. STUCKEY, | ) | No. ED111093 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Jason M. Sengheiser |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED: December 26, 2023 |

## Introduction

Jordan D. Stuckey ("Stuckey") appeals from the motion court's judgment denying his Rule 29.15[1] motion for post-conviction relief. Stuckey raises three points on appeal alleging the motion court clearly erred in denying his claims of ineffective assistance of Trial Counsel. Stuckey first contends Trial Counsel was ineffective by not objecting to the investigating detective's testimony that Stuckey did not act in self-defense, which prejudicially impaired Stuckey's self-defense claim. In Points Two and Three, Stuckey argues Trial Counsel was ineffective for failing to call certain witnesses—a mental health expert and C.B., a character witness—during the penalty phase of his trial to present mitigation testimony, which prejudiced Stuckey in that the jury might have recommended a lesser sentence. Because Trial Counsel opened the door to the detective's testimony, an objection would not have been meritorious, and

---

[1] All Rule references are to Mo. R. Crim. P. (2022).

we deny Point One.  Because Trial Counsel made a strategic decision not to call a mental health expert and instead maintain a consistent theory of self-defense, we deny Point Two.  Because the motion court was free to believe Trial Counsel's testimony that Stuckey did not tell him about C.B. as a potential character witness, we deny Point Three.  Accordingly, we affirm the motion court's judgment.

Factual and Procedural History

The facts underlying this case involve the shooting death of Victim arising out of a heated exchange between Stuckey and Victim relating to a romantic partner ("Witness") in January 2017.  The State charged Stuckey with first-degree murder and armed criminal action.  Stuckey was eighteen years old at the time of the offenses.

The case proceeded to a jury trial.  Stuckey claimed self-defense.  The State called the investigating detective (the "Detective") to testify.  On cross-examination, Trial Counsel questioned the Detective about his training in self-defense and, based on his training and experience, when it was reasonable to shoot someone in self-defense.  Trial Counsel presented the Detective with a hypothetical scenario of a person approaching him with their hands behind their back, threatening to kill him, and moving their hand forward, while another person unsuccessfully attempted to intervene and stop them.  The Detective agreed those circumstances might require shooting in self-defense.  Following cross-examination, the trial court held a sidebar, during which the State reasoned that Trial Counsel opened the door to inquire about Stuckey's and Victim's postures and behaviors as recorded in the video surveillance footage of the shooting in this case. [2]  Subsequently, on redirect examination by the State, the Detective testified that he had reviewed the video of the shooting in this case and that the shooting did not

---

[2] The video was not deposited with this Court for the record on appeal pursuant to Mo. R. Civ. P. Rule 81.16.

appear to him to have been done in self-defense. The Detective described Stuckey's and Victim's actions in the video, which was played for the jury. The Detective noted that the Witness stepped between Stuckey and Victim to try to intervene. The Detective further explained that Victim made no aggressive movements, never moved his hand, and had started to walk away prior to Stuckey shooting him. Trial Counsel did not object to the Detective's testimony.

Stuckey took the stand and testified that he shot Victim in self-defense. Stuckey testified that Victim gave him every reason to believe he had a weapon and was ready and willing to use it.

At the close of all evidence, the trial court instructed the jury on murder in the first degree as well as several lesser-included offenses, including voluntary manslaughter. The trial court also instructed the jury on armed criminal action and the justification of self-defense. The jury found Stuckey guilty of voluntary manslaughter and armed criminal action.

The case proceeded to the penalty phase before the same jury. Trial Counsel called no witnesses. The jury recommended sentencing Stuckey to fifteen years in prison for voluntary manslaughter and ten years for armed criminal action. At sentencing, Trial Counsel called three character witnesses to testify on Stuckey's behalf: a family friend and two family members. The trial court sentenced Stuckey as recommended by the jury, with the terms to be served consecutively. Stuckey appealed from his convictions and sentences, which this Court affirmed in State v. Stuckey, 600 S.W.3d 858 (Mo. App. E.D. 2020) (per curiam).

Stuckey then moved for post-conviction relief under Rule 29.15. In his amended motion, Stuckey raised various claims of ineffective assistance of Trial Counsel, including the three claims raised in this appeal: (1) failure to object to the Detective's opinion testimony that

3

Stuckey did not shoot Victim in self-defense; (2) failure to call a mental health expert during the penalty phase to offer mitigation evidence as to the difference between adult and juvenile brains and how those differences affect decision-making and determine relative culpability; and (3) failure to call certain character witnesses during the penalty phase, including a dropout recruiter, C.B. In a separate point, Stuckey also claimed Trial Counsel was ineffective for failing to present a diminished-capacity defense during the guilt phase of trial. The motion court granted an evidentiary hearing.

At the evidentiary hearing, Trial Counsel testified that he did not object to the Detective's self-defense testimony because the testimony was not improper. Specifically, Trial Counsel explained that the testimony was not an expert opinion, but presented the investigating officer's explanation of how he arrived at his determination that led him to initiate the filing of the charges against Stuckey.

Regarding penalty phase witnesses, Stuckey testified via deposition that he had informed Trial Counsel that he had been diagnosed with ADHD, depression, post-concussion syndrome, and had recently sustained a concussion in a car accident. Stuckey stated that Trial Counsel had supplied authorization forms for release of medical information, which Stuckey completed. Stuckey called a mental health expert (the "Mental Health Expert"), a forensic psychiatrist, to testify via deposition. The Mental Health Expert stated he had been available to evaluate Stuckey and testify at trial. The Mental Health Expert diagnosed Stuckey with multiple disorders, of which he found the most significant to be the traumatic brain injury from a recent car accident, which could have impacted Stuckey's cognitive understanding of the situation at the time of the offense. The Mental Health Expert further opined that because Stuckey was eighteen years old at the time of the offense, his brain was not yet fully developed. The Mental

4

Health Expert explained that adolescent thinking is reflexive, reactionary, impulsive, immature, and not based on a consideration of facts and circumstances, and that those factors would have had a higher impact on Stuckey, who was the victim of a traumatic brain injury and suffering from depression.

Trial Counsel testified that he had extensive discussions with Stuckey about trial strategy. He had explained to Stuckey that a defense based on diminished capacity or disability conflicted with a defense based on self-defense, and that Stuckey had to choose one or the other, and Stuckey chose self-defense. Trial Counsel stated he similarly discussed with Stuckey what strategy to use during the penalty phase, including that exploring how mental health issues could have impacted his behavior at the time of the shooting would be inconsistent with his self-defense claim from the guilt phase. Trial Counsel stated he did not call an expert regarding juveniles because he did not think it would be helpful as Stuckey was eighteen years old at the time of the offense and was pursuing a justification theory of self-defense.

Stuckey testified that he gave Trial Counsel a list of names to call as potential witnesses for the penalty phase and that C.B.'s name was on the list. C.B. testified at the evidentiary hearing that he would have been available to testify as a character witness. C.B. would have testified that Stuckey had contacted him about completing his high school education and, over the next three years, C.B. found Stuckey to be warm and helpful with other students, capable of leadership, and never displayed any behavioral problems. Trial Counsel denied ever hearing of C.B. Trial Counsel explained he had strategic reasons for calling and not calling particular character witnesses, such as considering what negative testimony could be elicited on cross-examination from otherwise good character witnesses.

5

Following the evidentiary hearing, the motion court denied Stuckey's Rule 29.15 motion. In its findings of fact and conclusions of law, the motion court found Stuckey's claims had no merit. Stuckey now appeals.

Points on Appeal

Stuckey raises three points on appeal alleging the motion court erred in denying his Rule 29.15 motion. Point One maintains Trial Counsel was ineffective in failing to object to the Detective's testimony that Stuckey did not act in self-defense, which prejudiced Stuckey by impacting the effectiveness of his self-defense claim. Point Two argues Trial Counsel was ineffective for failing to call a mental health expert to testify during the penalty phase. Point Three asserts Trial Counsel was ineffective for failing to call C.B. as a character witness during the penalty phase, which prejudiced Stuckey because he might have gotten a lesser sentence.

Standard of Review

Our review of a motion for post-conviction relief is "limited to a determination of whether the findings and conclusions of the [circuit] court are clearly erroneous." Rule 29.15(k). We presume the motion court's findings and conclusions are correct and will reverse "only if, after a review of the entire record, [we are] left with the definite and firm impression that a mistake has been made." Wright v. State, 669 S.W.3d 383, 387 (Mo. App. E.D. 2023) (internal citations omitted). Reviewing the record on appeal, "[w]e defer to the [motion] court's greater ability to judge the credibility of the witnesses." Id. (internal quotation omitted).

Discussion

**I.      Strickland[3] Standard for Ineffective Assistance of Counsel**

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

6

"To prevail on a claim of ineffective assistance of counsel, the movant bears the burden of establishing (1) his defense counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he was prejudiced by that failure." Bozeman v. State, 653 S.W.3d 132, 136 (Mo. App. E.D. 2022) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). A movant must prove both prongs by the preponderance of the evidence. Id. (internal citation omitted). "If either Strickland prong is not satisfied, we need not consider the remaining prong, and the ineffective assistance of counsel claim necessarily fails." Wright, 669 S.W.3d at 388 (internal citation omitted).

Under the performance prong, the movant must overcome the "strong presumption that [trial] counsel's conduct fell within the 'wide range of reasonable professional assistance.'" Id. (internal quotation omitted). "The question in an ineffective assistance claim is not whether [trial] counsel could have or even, perhaps, should have made a different decision, but rather whether the decision made was reasonable under all the circumstances." Id. (quoting Johnson v. State, 406 S.W.3d 892, 901 (Mo. banc 2013)).

Under the prejudice prong, "the movant must show there was a reasonable probability that, but for [trial] counsel's alleged errors, the outcome would have been different." Roberts v. State, 535 S.W.3d 789, 797 (Mo. App. E.D. 2017) (citing Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009)). In the guilt phase, proving prejudice requires showing a reasonable probability that, but for trial counsel's actions, the verdict of the trial would have been different. Wright, 669 S.W.3d at 388 (internal quotation omitted). In the penalty phase, proving prejudice requires the movant to show there is a reasonable probability that he would have received a lesser sentence. Roberts, 535 S.W.3d at 801 (internal citation omitted).

II.     **Point One—Detective's Testimony**

7

Point One contends Trial Counsel was ineffective in failing to object to Detective's testimony that Stuckey did not shoot Victim in self-defense.

"A trial counsel's failure to object is ordinarily trial strategy and therefore afforded considerable deference." Shelton v. State, 440 S.W.3d 464, 470 (Mo. App. E.D. 2014) (citing Helmig v. State, 42 S.W.3d 658, 679 (Mo. App. E.D. 2001)). "Counsel has no duty to assert non-meritorious objections, and a failure to do so will not provide the basis for a claim of ineffective assistance." Id. (citing Anderson v. State, 196 S.W.3d 28, 38 (Mo. banc 2006)); see also Wright, 669 S.W.3d at 389 (citing Storey v. State, 175 S.W.3d 116, 132 (Mo. banc 2005)).

The record shows that Stuckey initially raised the issue of the Detective's training and experience with respect to self-defense on cross-examination. Stuckey also elicited testimony from the Detective about what circumstances would justify shooting someone in self-defense, suggesting that Stuckey's conduct was reasonable. At sidebar, the State argued that Stuckey opened the door to the State asking the Detective about Stuckey's and Victim's conduct as depicted in the video, and the trial court agreed. "[A] party can open the door to the admission of evidence 'with a theory presented in an opening statement or through cross-examination.'" State v. Wood, 580 S.W.3d 566, 577 (Mo. banc 2019) (quoting State v. Shockley, 410 S.W.3d 179, 194 (Mo. banc 2013)).

> When a party inquires into part of an act, occurrence, or transaction they have "opened the door" to testimony regarding that act, occurrence, or transaction, and the opposing party is entitled to inquire into other parts of it in order to rebut possible inferences that may be drawn from an incomplete version presented by the adversary or to prove the party's own version of events.

Tisius v. State, 519 S.W.3d 413, 426 (Mo. banc 2017) (quoting State v. Tisius, 362 S.W.3d 398, 409 (Mo. banc 2012)). Clearly, the record shows that Stuckey opened the door to the Detective's testimony on redirect examination about whether the video, which was shown to the jury,

demonstrated circumstances justifying Stuckey's shooting of Victim.  See id.  Therefore, Stuckey—who does not challenge the reasonableness of Trial Counsel's initial line of questioning—cannot now claim that Trial Counsel was ineffective for failing to object to the Detective's testimony on redirect examination.[4]  Such an objection would have been meritless, as the challenged testimony was self-invited.  See Shelton, 440 S.W.3d at 470 (citing Anderson, 196 S.W.3d at 38); see also State v. Bolden, 371 S.W.3d 802, 806 (Mo. banc 2012) (internal quotation omitted) ("It is axiomatic that a defendant may not take advantage of self-invited error or error of his own making.").  The motion court did not clearly err in finding the claim was meritless based on the trial record.  See Rule 29.15(k).  Point One is denied.

## III.    Points Two and Three—Penalty Phase Witnesses

Points Two and Three allege Trial Counsel performed ineffectively by failing to call certain witnesses—the Mental Health Expert and a character witness, C.B.—to testify during the penalty phase of trial.

"There is a strong presumption [that] [trial] counsel's failure to call a witness at sentencing is a matter of reasonable trial strategy and will not support an ineffective assistance of counsel claim."  Roberts, 535 S.W.3d at 800 (internal citation omitted).  In order to satisfy the performance prong for failure to call a witness during jury sentencing, the movant must show: (1) trial counsel's decision involved something other than reasonable trial strategy; (2) the witness could have been located through a reasonable investigation; (3) the witness would have testified if called; and (4) the witness's testimony would have aided in the movant's defense.  Id. at 800–01 (internal citation omitted).  To meet the prejudice prong, the movant must show "a

_____

[4] Indeed, as the motion court noted, it is not error for the trial court to permit the State to present evidence that the defendant did not act in self-defense because once the defendant injects a claim of self-defense into the case, the burden shifts to the State to prove that the defendant did not act in lawful self-defense.  See State v. Henderson, 311 S.W.3d 411, 414 (Mo. App. W.D. 2010) (internal quotation omitted).

9

reasonable probability that he would have received a lesser sentence." Id. at 801 (internal citation omitted).

A.      Point Two—Mental Health Expert[5]

Stuckey alleges Trial Counsel performed deficiently because the Mental Health Expert could have presented mitigation evidence relating to Stuckey's mental disorders and/or disabilities (including ADHD, depression, and recent concussions) as well as Stuckey's brain development as he had only recently turned eighteen years old. Stuckey posits that had Trial Counsel called the Mental Health Expert during the penalty phase, the jury would have heard evidence that was not otherwise presented during trial regarding how Stuckey's age and limited brain development at the time of the offense could have contributed to his conduct, which may have persuaded the jury to recommend a lesser sentence.[6]

"The selection of expert witnesses is generally a question of trial strategy." Bozeman, 653 S.W.3d at 137 (citing Shockley v. State, 579 S.W.3d 881, 906 (Mo. banc 2019)) (finding trial counsel was not ineffective during sentencing for considering but choosing not to call an expert witness to offer mitigation testimony about juvenile brain development for a juvenile

---

[5] The State contends that Point Two was not preserved for appeal. Point Two alleges Trial Counsel was ineffective for failing to call a mental health expert to testify during the penalty phase about the impact of Stuckey's juvenile brain development and mental disorders. We agree that Point Two combines two distinct claims in the amended motion: (1) whether Trial Counsel was ineffective for failing to call a mental health expert to testify during the penalty phase about the neurological differences between juveniles and adults and (2) whether Trial Counsel was ineffective for failing to pursue a diminished-capacity defense during the guilt phase of trial. Claims for post-conviction relief on appeal cannot broaden the claims made in the amended motion. See McLaughlin v. State, 378 S.W.3d 328, 340 (Mo. banc 2012) (internal quotation omitted) (noting "any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal"). Here, we find Stuckey preserved his claim as to the distinction between juvenile and adult brain development. See id. We also choose to exercise our discretion to address the argument relating to the other mental health issues because the record shows Trial Counsel's decisions on both grounds were a matter of reasonable strategy.

[6] We note that Point Two sets forth the wrong prejudice standard by alleging the outcome of his trial would have been different. However, in the argument portion of his brief, Stuckey clarified that he was prejudiced due to the probability that the testimony would have caused to the jury to recommend a lesser sentence.

defendant). "[D]ecisions made after counsel has investigated and considered possible strategies are virtually unchallengeable." Id. at 136 (quoting Johnson, 406 S.W.3d at 899).

On appeal, Stuckey admits that Trial Counsel's failure to further investigate was not the result of unintentional oversight or inadvertence but was a deliberate choice made by Trial Counsel. Indeed, Trial Counsel testified he considered calling a mental health expert to testify regarding the sentencing of juveniles but did not think it would be helpful because Stuckey was eighteen years old (and thus not a juvenile) at the time of the offense. Further, Trial Counsel testified he believed that raising the issue of juvenile brain development, or the other mental health issues he discussed at length with Stuckey, would have been inconsistent with Stuckey's claim of self-defense. The fact that Trial Counsel considered and decided against presenting mental health evidence starkly distinguishes this case from Vaca v. State, 314 S.W.3d 331 (Mo. banc 2010), on which Stuckey relies. Vaca did not hold that trial counsel was ineffective merely for failing to present testimony from a mental health expert during the penalty phase, but that trial counsel performed unreasonably because he never even considered calling such a witness. Vaca, 314 S.W.3d at 337; see also Bozeman, 653 S.W.3d at 137 (distinguishing from Vaca on the grounds that trial counsel clearly did *consider* expert testimony and chose not to present any).

Further, Trial Counsel's strategy was reasonable in seeking to avoid presenting the jury conflicting theories as to why Stuckey acted the way he did in shooting Victim. See State v. Harris, 870 S.W.2d 798, 816 (Mo. banc 1994) (noting "it is often the case that the defense strategy chosen during the guilt phase determines the evidence that trial counsel can credibly present to the jury during the penalty phase"). Stuckey's theory of self-defense, which he chose to pursue after discussions with Trial Counsel, depended on persuading the jury that he was justified in shooting Victim, whom he testified he believed had a gun and was ready and willing

11

to use it against him. Presenting testimony through the Mental Health Expert would have suggested that Stuckey, as a recent juvenile and with mental health issues relating to ADHD, depression, and post-concussion syndrome, did not fully appreciate the risks and consequences during the incident. Such a position is contrary to a claim of self-defense. We agree with the State that Trial Counsel had legitimate concern that presenting such testimony would have been inconsistent with Stuckey's strong claim that he acted deliberately and reasonably in defending himself. Furthermore, presenting such evidence for the first time in the penalty phase could possibly leave the jury to wonder why such issues were not raised earlier at trial and potentially to recommend an even higher sentence due to the conflicting accounts. See id. ("The injection of evidence of a mental disease or defect during the penalty phase risks alienating a jury that has consistently heard a different theory of the case during the guilt phase."); see also Antwine v. State, 791 S.W.2d 403, 407–08 (Mo. banc 1990) (finding trial counsel employed reasonable strategy in considering but deciding against calling a mental health expert during the penalty phase because switching from self-defense in the guilt phase to diminished capacity in the penalty phase would lose a certain amount of credibility with the jury).

Trial Counsel's strategy clearly has drawbacks: "[W]hile maintaining a consistent theory throughout trial may often be the best approach, at other times it may be prudent to change strategies to accommodate trial developments." Middleton v. State, 103 S.W.3d 726, 736 (Mo. banc 2003) (citing Harris, 870 S.W.3d at 816; Clayton v. State, 63 S.W.3d 201, 206–07 (Mo. banc 2001)). Ultimately, however, "[t]rial counsel is normally in the best position to assess the tradeoffs involved in selecting particular defenses" and "[w]here counsel has investigated possible strategies, courts should rarely second-guess [trial] counsel's actual choices." Id. "It is

12

a reasonable strategic decision by trial counsel to avoid presenting a defense *du jour* to the jury." Harris, 870 S.W.2d at 816.

We cannot say trial counsel was unreasonable in his strategy to maintain consistency with his defense theory and reject the notion of switching to a juvenile-based or mental-health mitigation approach during the penalty phase. See id. Therefore, the motion court did not clearly err in denying the claim. See Rule 29.15(k). Point Two is denied.

B.      Point Three—C.B.

Point Three posits Trial Counsel was ineffective for failing to call C.B. as a character witness to testify at trial.

To prove a trial counsel was ineffective for failing to call a witness, it must be shown that the trial counsel knew or should have known of the existence of the witness. Waldorf v. State, 673 S.W.3d 511, 516 (Mo. App. E.D. 2023) (internal quotation omitted).

During the evidentiary hearing, Stuckey and Trial Counsel gave conflicting testimony regarding C.B. Stuckey testified he gave C.B.'s name as a potential penalty-phase witness to Trial Counsel. Trial Counsel testified he had never heard of C.B.

We must defer to the motion court's finding as to the credibility of the witnesses before it. See Wright, 669 S.W.3d at 387 (internal quotation omitted); see also Barton v. State, 432 S.W.3d 741, 760 (Mo. banc 2014) (internal quotation omitted). The motion court is "in a superior position to resolve [a] conflict in the testimony." Micheaux v. State, 675 S.W.3d 658, 671 (Mo. App. W.D. 2023) (internal citation omitted). Further "[t]he motion court is not required to believe the testimony of the movant or any other witness, even if uncontradicted[.]" Id. (internal quotation omitted).

Because Trial Counsel denied ever hearing of C.B., and Stuckey was required to show that he identified C.B. as a potential witness to Trial Counsel in order to prevail on his claim, the

motion court was free to credit Trial Counsel's testimony on the issue over Stuckey's and did not clearly err in denying the claim. See id.; Waldolf, 673 S.W.3d at 516 (internal quotation omitted); Wright, 669 S.W.3d at 387 (internal quotation omitted). Point Three is denied.

Conclusion

The judgment of the motion court is affirmed.


_____
KURT S. ODENWALD, Presiding Judge


Michael E. Gardner, J., concurs.
Renée D. Hardin-Tammons, J., concurs.